CLERK'S OFFICE U.S. DIST. CO
AT ROANOKE, VA
FILED
AUG 3 1 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ARTIS BAINES, et al., ) | |
|     Plaintiffs, ) | Civil Action No. 7:06CV00517 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| D. MCKNIGHT, et al., ) | By: Hon. Glen E. Conrad |
|     Defendants. ) | United States District Judge |

Artis Baines, Carlos Matthews, and Michael Nappier, Virginia inmates proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against D. McKnight, Tracy Ray, and Larry Huffman. Having reviewed the complaint, the court concludes that the plaintiffs have failed to state a claim upon which relief may be granted. Therefore, the court will dismiss the complaint pursuant to 28 U.S.C. § 1915A(b)(1).[1]

## Background

The plaintiffs are presently incarcerated at Red Onion State Prison. They allege that when Baines received his dinner tray on June 24, 2006, he noticed that there were worms in his broccoli. Baines notified Officer Gentry, who obtained a new tray for him.

That same day, Baines filed an informal complaint regarding the worms. D. McKnight, the prison's director of food services, responded to the complaint on July 6, 2006. McKnight explained that the prison staff prepares 2400 meals per day, and that occasionally "something will get pass [sic]." McNight also noted that Baines' tray had been replaced. The following day, Baines filed a regular grievance, alleging that McKnight's response was unreasonable. Tracy Ray, the Warden of Wallens Ridge, determined that the grievance was unfounded. Ray noted that trays are readily

---

[1] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails state a claim upon which relief may be granted.

replaced when an inmate questions an item on a tray, and that proper procedures had been applied. The Warden's decision was upheld by the Regional Director, Larry Huffman, on August 9, 2006.

The plaintiffs further allege that when Matthews received his dinner tray on July 18, 2006, he noticed that there were ants on his hotdogs. Likewise, when Nappier received his food tray on July 27, 2006, he noticed that his squash contained worms.

## Discussion

In order to state a claim under § 1983, plaintiffs must allege facts sufficient to establish that they have been deprived of rights guaranteed by the Constitution or laws of the United States and that such deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Having reviewed the plaintiffs' allegations, the court concludes that they have failed to state a claim of constitutional magnitude against any of the named defendants.

1.   Plaintiffs' Eighth Amendment Claim

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337 (1981). However, inmates are not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. Id. at 347. In order to state a claim of constitutional significance, inmates must allege facts which show that they have either sustained a serious or significant physical or emotional injury resulting from the challenged conditions of confinement, or that the conditions have created an unreasonable risk of serious injury. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25, 35-36 (1993). Additionally, inmates must also allege facts which show that prison officials acted with deliberate indifference. Strickler,

989 F.2d at 1379.

Applying these principles to the plaintiffs' allegations, the court concludes that the plaintiffs have failed to state a claim under the Eighth Amendment. The plaintiffs noticed the worms and ants as soon as they received their trays, and there is no indication that any of the worms or ants were consumed.[2] The court does not doubt that the sight of worms or ants in the plaintiffs' food was unpleasant and unappetizing. However, the plaintiffs do not allege that they suffered any deleterious effects. Moreover, given the plaintiffs' limited exposure to the worms and ants, the court concludes that the plaintiffs have failed to allege sufficient facts to establish that they are at risk of future harm. For these reasons, the plaintiffs' Eighth Amendment claim must be dismissed.

2. <u>Plaintiffs' Due Process Claim</u>

The plaintiffs also allege that the defendants violated their rights under the Due Process Clause of the Fourteenth Amendment by serving unsanitary food. "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of 'life, liberty, or property' by governmental action." <u>Beverati v. Smith</u>, 120 F.3d 500, 503 (4th Cir. 1997). Here, it is undisputed that the plaintiffs were not deprived of life or property by governmental action; they claim only that the prison officials deprived them of a protected liberty interest.

Inmates enjoy a protected liberty interest only when they can demonstrate that they suffered an "atypical and significant hardship in relation to the ordinary incidents of prison life." <u>Sandin v.</u>

---

[2]Baines acknowledges that he received a replacement tray as soon as he showed the broccoli to Officer Gentry.

Conner, 414 U.S. 472, 484 (1995).³ The determination of whether such an atypical and significant hardship exists is a question of law. Beverati v. Smith, 120 F.3d 500, 503 (4th Cir. 1997).

Having reviewed the plaintiffs' allegations, the court concludes that they have failed to allege sufficient facts to establish that their one-time exposure to unsanitary food posed an atypical and significant hardship in relation to ordinary prison life. See Id. at 504 (holding that inmates were not subjected to an atypical and significant hardship where they were allegedly placed in segregation cells infested with vermin and smeared with feces and urine). As a result, the challenged incidents did not implicate a liberty interest requiring due process protections.

## Conclusion

For the reasons stated, the court concludes that the plaintiffs have failed to state a claim upon which relief may be granted.⁴ Thus, the court will dismiss the plaintiffs' complaint without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1). The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the plaintiffs and counsel of record for the

---

³The plaintiffs appear to argue that a liberty interest arises from the "mandatory" language of various Division Operating Procedures (DOPs) promulgated by the Virginia Department of Corrections. However, this argument is without merit. "Prior to the decision of the Supreme Court in Sandin, the analysis of whether a prisoner was deprived of a liberty interest focused not on the nature of the deprivation experienced by the prisoner, but on the language of the applicable prison regulations and whether such language was 'mandatory.'" Bevarati, 120 F.3d 500 at 503, n. 3. In Sandin, the Supreme Court criticized this methodology, because it created a disincentive for states to promulgate procedures for prison management, and it caused federal courts to become overly involved in the day-to-day management of prisons. Sandin, 515 U.S. at 482-483. These concerns led the Supreme Court to reject the mandatory language method previously adopted in Hewitt v. Helms, 459 U.S. 460 (1983), and instead focus on the nature of the deprivation experienced by the prisoner. See Sandin, 515 U.S. at 483-484; Bevarati, 120 F.3d 500 at 503, n.3. As the Supreme Court recently noted, it is now "clear," after Sandin, "that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to ordinary incidents of prison life.'" Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 2394 (2005) (quoting Sandin, 515 U.S. at 484).

⁴Having reached this conclusion, the plaintiffs' motion for a preliminary injunction and the plaintiffs' motion for appointment of counsel will be denied.

defendants.

ENTER: This 31st day of AUGUST, 2006.

_____
United States District Judge